COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Judges Humphreys,* Athey and Fulton
Argued at Norfolk, Virginia


ANTHONY TYRONE REESE

                                                    MEMORANDUM OPINION** BY
v.        Record No. 1766-22-1                      JUDGE JUNIUS P. FULTON, III
                                                    FEBRUARY 27, 2024

COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF THE CITY OF CHESAPEAKE
                          Robert G. MacDonald, Judge

            Brett P. Blobaum, Senior Appellate Attorney (Jennifer T. Stanton,
            Senior Appellate Attorney; Virginia Indigent Defense Commission,
            on briefs), for appellant.

            David A. Mick, Assistant Attorney General (Jason S. Miyares,
            Attorney General, on brief), for appellee.


        The trial court found Anthony Tyrone Reese in violation of the conditions of his probation,

revoked his remaining suspended sentence for a grand larceny conviction, and ordered him to serve

two years.  Contending that the trial court erred in denying his motion to dismiss the revocation

proceeding, Reese argues that the trial court lacked jurisdiction because his period of supervised

probation—which he claims was limited by the recent amendment of Code § 19.2-303—had

already expired.  We affirm the judgment for the reasons that follow.

                                        BACKGROUND

        "In revocation appeals, the trial court's 'findings of fact and judgment will not be reversed

unless there is a clear showing of abuse of discretion.'" *Jacobs v. Commonwealth*, 61 Va. App.

---

        * Judge Humphreys participated in the hearing and decision of this case prior to the
effective date of his retirement on December 31, 2023.

        ** This opinion is not designated for publication.  *See* Code § 17.1-413(A).

529, 535 (2013) (quoting *Davis v. Commonwealth*, 12 Va. App. 81, 86 (1991)). "The evidence is considered in the light most favorable to the Commonwealth, as the prevailing party below." *Id.*

In January 2013, the trial court convicted Reese for grand larceny and sentenced him to eight years of imprisonment with six years and seven months suspended. The sentencing order required Reese to complete an indeterminate period of supervised probation upon his release from confinement.

On June 26, 2017, the trial court found Reese in violation of his probation, revoked his suspended sentence, and resuspended six years and five months, thus giving him two months to serve. The revocation order imposed "the same conditions as contained in the previous sentencing order" but also required Reese to pay court costs and to report to the probation office "immediately upon release from confinement." Following a second revocation proceeding, on June 11, 2019, the trial court found Reese in violation of his probation, revoked his suspended sentence, and resuspended five years. The trial court again imposed "the same conditions as contained in the previous sentencing order" and required Reese to complete a substance abuse counseling program, have monthly in-person meetings with his probation officer, and submit to urine screens twice per month.

Reese's probation officer issued a major violation report ("MVR") dated July 19, 2022, which is the genesis of the instant appeal. The MVR alleged that Reese violated Condition 6—that he follow the probation officer's instructions and report as directed—and Condition 8—prohibiting use of illegal drugs. Beginning in August 2021, Reese failed to report for drug screening, request a new Medicaid card, obtain a COVID-19 test required for admittance to a substance abuse facility, and report to complete a referral for that program. In addition, starting in August 2020 and continuing through June 2022, Reese tested positive for drugs and admitted drug use on numerous occasions. The MVR further charged that Reese violated a special condition to enroll in and

- 2 -

complete substance abuse treatment. Reese was terminated from the treatment program after recurrent absences. Reese was arrested upon a capias for the probation violation on August 9, 2022.

At a revocation hearing, Reese's probation officer detailed Reese's violations of his probation. While not conceding the violations, Reese stipulated that he tested positive for drugs on 14 occasions. However, Reese moved to dismiss the revocation proceeding, asserting that, as amended effective July 1, 2021, Code § 19.2-303 limited the period of supervised probation to five years from the release from any active incarceration. Without contesting the validity of his original sentencing order or the subsequent revocation orders, Reese contended that, applying Code § 19.2-303, the trial court lacked jurisdiction to find him in violation because he had already served more than five years of supervised probation after release from incarceration. At trial, the Commonwealth did not dispute that Reese had served more than five years of supervised probation since 2013, but instead argued that the recent amendment of Code § 19.2-303 which Reese purported to rely upon did not apply retroactively. The trial court agreed, denied the motion to dismiss, found Reese in violation of his probation, revoked his five-year suspended sentence, and resuspended three years. The trial court also removed Reese from probation. This appeal followed.

ANALYSIS

As a result of statutory changes enacted by the General Assembly in 2021, a trial court is now limited in the maximum period of supervised probation it may impose for a criminal conviction. Effective July 1, 2021, the General Assembly amended Code § 19.2-303 to provide that if a trial court suspends a defendant's sentence, "[t]he court may fix the period of probation for up to the statutory maximum period for which the defendant might originally have been sentenced to be imprisoned. Any period of supervised probation shall not exceed five years from the release of the defendant from any active period of incarceration." 2021 Va. Acts Sp. Sess. I chs. 176, 538. Thus, a trial court may no longer suspend the execution of a sentence conditioned upon uniform

- 3 -

good behavior or unsupervised probation for a period longer than the maximum sentence that the court could impose for the offense, and a trial court is likewise limited to imposing no more than five years of supervised probation. In addition, the General Assembly amended Code § 19.2-306(C) to state that, in determining whether a violation occurred within the period of suspension, "[t]he court shall measure the period of any suspension of sentence from the date of the entry of the original sentencing order." 2021 Va. Acts Sp. Sess. I ch. 538.

Reese maintains that due to the amendments to the Code, "the trial court can only impose supervision up to five years, and . . . the period of five years is measured from the date of the original sentencing order." According to Reese, the trial court lacked jurisdiction to revoke his suspended sentence because his violation was not initiated until after July 1, 2021, when the statutory amendments cut short the period of supervised probation that could be imposed in the first instance. Reese concludes, "the trial court did not have jurisdiction to violate Mr. Reese's supervision because the term of his supervision had expired."

While Reese contends on brief that he "does not challenge the validity of the prior sentencing orders," nor is he arguing that the statutory amendments should be applied "retroactively," his arguments advanced at trial and on appeal belie that contention. On brief, he argues that because the probation revocation proceedings were initiated against him after the statutory amendments went into effect, the trial court was stripped of jurisdiction, as "his supervision obligation expired long before." As the Commonwealth points out, this "jurisdictional" argument is really just an attempt to "bootstrap a retroactivity argument to collaterally attack his previous sentences."

At oral argument, Reese clarified that in making his "jurisdictional" argument, he challenges the trial court's *active* jurisdiction, not its *subject matter* jurisdiction. However, we note that his arguments on brief incorporate concepts related to a trial court's subject matter

- 4 -

jurisdiction over criminal probation revocation proceedings; therefore, we address both types of jurisdiction in this case.

Whether a trial court possesses subject matter jurisdiction is a question of law this Court considers de novo. *Knight v. Ottrix*, 69 Va. App. 519, 523 (2018). "Subject matter jurisdiction 'refers to a court's power to adjudicate a class of cases or controversies.'" *Riddick v. Commonwealth*, 72 Va. App. 132, 141 (2020) (quoting *Cilwa v. Commonwealth*, 298 Va. 259, 266 (2019)). "The subject matter jurisdiction of circuit courts is 'entirely prescribed by statute.'" *Id.* at 143 (quoting *Kelley v. Stamos*, 285 Va. 68, 75 (2013)). It "can only be acquired by virtue of the Constitution or of some statute. Neither the consent of the parties, nor waiver, nor acquiescence can confer it." *Pure Presbyterian Church of Wash. v. Grace of God Presbyterian Church*, 296 Va. 42, 49-50 (2018) (quoting *Humphreys v. Commonwealth*, 186 Va. 765, 772-73 (1947)).

The Virginia Supreme Court has explained that "'whether an alleged error by a trial court renders its order void *ab initio* or merely voidable turns on the subtle, but crucial, distinction deeply embedded in Virginia law' between two very different but semantically similar concepts: subject matter jurisdiction and, for lack of a better expression, active jurisdiction." *Cilwa*, 298 Va. at 266 (quoting *Jones v. Commonwealth*, 293 Va. 29, 46 (2017)). "'[A]ctive jurisdiction'— pragmatically called the 'jurisdiction to err'—involves not the power of the court but the proper exercise of its authority." *Id.* (footnote omitted) (quoting *Farant Inv. Corp. v. Francis*, 138 Va. 417, 427 (1924)).

> Simply stated, active jurisdiction requires a court with subject matter jurisdiction to adjudicate a case consistent with the law governing that adjudication. As our recent cases have emphasized, "[t]his distinction guards against the improper elevation of a court's failure 'to comply with the requirements for exercising its

- 5 -

authority to the same level of gravity as a lack of subject matter jurisdiction.'"

*Id.* at 266-67 (alteration in original) (quoting *Jones*, 293 Va. at 47).

Because "[a] Virginia court's 'jurisdiction to revoke a convict's probation and suspension of sentence is part of [the] criminal process,'" the trial court that imposed the sentence has subject matter jurisdiction to revoke the suspended sentence. *Id.* at 267 (second alteration in original) (quoting *Green v. Commonwealth*, 263 Va. 191, 194 (2002)). Therefore, the trial court clearly had subject matter jurisdiction over the case. The only question is whether its active jurisdiction was affected by the 2021 amendments such that the trial court lacked the authority to consider whether Reese violated the terms of supervised probation ordered in 2019. We answer that question in the negative, given that the amendments clearly were not intended to be retroactive.

Code §§ 19.2-303 through 19.2-306 "govern the procedures for the trial court's *exercise* of authority over suspended sentences, probation, and revocation proceedings." *Id.* at 269 (addressing Code §§ 19.2-304 and -306). Nonetheless, these procedural statutes do not "*grant*[] a trial court categorical judicial power over criminal cases or their attendant proceedings, and thus, . . . can[not] reasonably be read to strip a trial court of subject matter jurisdiction if the court violates those procedures." *Id.* "The validity of a judgment based upon a challenge to the application of a statute raises a question of trial error, and not a question of jurisdiction." *Pure Presbyterian*, 296 Va. at 56 (quoting *Parrish v. Jessee*, 250 Va. 514, 521 (1995)). Consequently, the 2021 amendments to the revocation statutes merely place new limitations on a trial court's exercise of its "active" jurisdiction but do not strip it of subject matter jurisdiction over revocation proceedings generally.

Code § 19.2-306(A) permits a trial court to revoke a suspended sentence for any cause occurring "at any time within the probation period, or within the period of suspension fixed by

the court." Nonetheless, "if neither period was fixed, the court may revoke a suspended sentence for any 'cause the court deems sufficient that occurred within the maximum period for which the defendant might originally have been sentenced to be imprisoned.'" *Cilwa*, 298 Va. at 268 (quoting Code § 19.2-306(A)).

Applying the second portion of Code § 19.2-306(A), the trial court's order sentencing Reese for grand larceny in 2013 "did not 'fix' a period of suspension or a specific period of probation." *Burnham v. Commonwealth*, 298 Va. 109, 115 (2019). The period of probation was "indeterminate." Thus, "[a]pplying Code § 19.2-306(A) according to its plain language," *id.*, the trial court retained the statutory authority to revoke Reese's suspended sentence for any cause deemed sufficient that occurred within the maximum period of 20 years to which he could have been sentenced and imprisoned pursuant to Code § 18.2-95, the code section under which he formerly pled guilty.

The trial court found Reese in violation of his probation for the first time in 2017, well within 20 years of the 2013 sentencing order. The trial court again imposed indefinite probation. The trial court found Reese in violation of his probation again in 2019, and, in the instant appeal, 2022. The trial court imposed an indefinite period of supervised probation in both of the revocation proceedings in 2017 and 2019 for an indeterminate period up to 20 years. Each of the revocation proceedings occurred within 20 years of the revocation immediately preceding it.

Importantly, the statutory scheme prior to the 2021 amendments allowed for a trial court to: (1) order supervised probation for an indeterminate period up to the maximum length of time for which a defendant may have been sentenced; (2) upon a subsequent probation violation, extend that term of supervised probation, again up to the maximum length of time for which a defendant may have been sentenced; and (3) calculate the period of suspension from the date of the subsequent revocation, not the initial sentencing. "We have previously recognized a trial

court's authority to extend a defendant's suspension period after entering a sentencing order."
*Wright v. Commonwealth*, 32 Va. App. 148, 151 (2000); *see also Dunham v. Commonwealth*, 59
Va. App. 634, 639 n.2, *aff'd*, 284 Va. 511 (2012). In *Briggs v. Commonwealth*, 21 Va. App. 338
(1995), the trial court entered a January 13, 1982 conviction order that suspended imposition of
the defendant's sentence for an unspecified period of time. Because the crime for which the
defendant had been convicted carried a maximum sentence of ten years, the suspension period
would have expired on January 13, 1992. *See id.* at 341-42. On November 10, 1983, the trial
court in *Briggs* revoked the suspended sentence and sentenced the defendant to ten years in
prison with five years suspended for an unspecified period of time. *Id.* at 343. In July 1994, the
trial court conducted another revocation proceeding, upon evidence that defendant had
committed another crime and probation violations in May and October of 1993. *Id.* The
defendant argued that the court lacked jurisdiction, contending that "because the trial court
provided no specific period of suspension in either the January 13, 1982 or November 10, 1983
orders, the statutory period of suspension under Code § 19.2-306 ran from the date of the first
order." *Id.* at 341. This Court rejected this contention and concluded:

> [T]he trial court had the power, pursuant to Code § 19.2-306, to
> revoke the original suspended sentence at any time until January
> 13, 1992. The trial court revoked the suspended sentence on
> November 10, 1983 and imposed the sentence that originally could
> have been imposed on January 13, 1982. All of the trial court's
> actions followed the statutory directives of Code § 19.2-306, and
> no case law or statutory authority restricts the trial court's actions
> in this case.

*Id.* at 344.

As in *Briggs*, the trial court's actions revoking Reese's suspended sentence in 2017 and
2019 followed the statutory directives of Code § 19.2-306. Notwithstanding the fact that Code
§ 19.2-303 was amended in 2021 to limit the *imposition* of an active period of probation to five
years, the amendment did not affect the trial court's active jurisdiction to adjudicate the alleged

probation violation, as each order was entered lawfully, pursuant to the law governing at the time. The trial court therefore possessed both subject matter jurisdiction over Reese's revocation in 2022 and had the authority—i.e., the active jurisdiction—under Code § 19.2-306 to find him in violation of his probation, revoke his suspended sentence, and order him to serve a portion of it. We thus reject Reese's claim that the trial court erred in denying his motion to dismiss on jurisdictional grounds. *See Wright*, 32 Va. App. at 150-51 (rejecting the argument that the *initial* period of suspension contained in the original sentencing order was "final twenty-one days after entry" pursuant to Rule 1:1, and ultimately holding that: (1) a trial court may alter and subsequently "extend" the period of suspension beyond the initial suspension period contained in the original sentencing order, and (2) such an extension does not implicate a trial court's jurisdiction to adjudicate any matters related to that period of suspension in the future); *see also Mohamed v. Commonwealth*, 56 Va. App. 95, 100 (2010) (acknowledging that circuit courts have subject matter jurisdiction over criminal matters, and further that "[a] circuit court's jurisdiction to revoke a convict's probation and suspension of sentence is part of [the] criminal process" (quoting *Green*, 263 Va. at 194)). Here, the 2019 revocation order placing Reese on supervised probation for an "indeterminate period"—which we construe to mean an indeterminate period up to 20 years, as permitted by the statute in effect at the time—was a lawful imposition of the trial court's sentencing authority.

As we noted above, there is a difference between subject matter jurisdiction and active jurisdiction. The Court in *Cilwa* previously held that the statutes governing probation revocation cannot be read to either grant or strip circuit courts of subject matter jurisdiction. 298 Va. at 269. "Unless a procedural statute clearly states otherwise, '[t]he validity of a judgment based upon a challenge to the application of [such] a statute raises a question of trial error, and not a question

of [subject matter] jurisdiction.'" *Id.* at 269-70. In short, Reese may not collaterally attack the 2019 revocation order based on the new restrictions contained in the 2021 amendments.

Having established that the trial court's June 11, 2019 revocation order was lawful and that the trial court did, in fact, have jurisdiction to enter said order, we next turn to Reese's implicit argument regarding retroactivity. Reese argues that because the 2022 revocation proceedings were initiated after the 2021 statutory amendments, the trial court no longer had active jurisdiction over him. Here Reese alleges pure "trial error," *Cilwa*, 298 Va. at 270, by the trial court in concluding that the court lacked the authority to consider whether Reese's actions violated the terms of his supervised probation, as ordered in 2019. He bases his claim on the fact that at the time of the issuance of the probation violation capias on August 9, 2022, he had already served well beyond five years of supervised probation. To conclude that the trial court lacked the power to consider the alleged violation of supervised probation, it would have to conclude that the order which set forth the conditions of probation was somehow not applicable, notwithstanding the fact that it was authorized by statute at the time ordered (prior to amendment of the statute). Therefore, despite his protestations otherwise, he implicitly is arguing retroactivity.

In effect, Reese argues that the constraints contained in the 2021 amendments, read "*in pari materia*," operate to retroactively strip the trial court of jurisdiction over Reese's probation related to the initial 2013 conviction and sentence. Here, there is no dispute that the 2019 revocation order was valid when entered and that under that order, Reese remained on supervised probation for an indeterminate period up to 20 years. Though Reese frames his argument as challenging the 2022 revocation order, we reject that contention as it was the terms of the 2019 revocation order that provided the basis for the trial court to revoke Reese's probation in 2022.

Applying principles of Virginia law concerning retroactivity, we hold that the five-year cap on supervised probation contained in Code § 19.2-303 does not apply retroactively.

"Our analysis is guided by the fundamental principles of statutory construction that retroactive laws are not favored, and that a statute is always construed to operate prospectively unless a contrary legislative intent is manifest." *Green v. Commonwealth*, 75 Va. App. 69, 79 (2022) (quoting *Berner v. Mills*, 265 Va. 408, 413 (2003)); *see also City of Charlottesville v. Payne*, 299 Va. 515, 530 (2021) ("Unless a contrary intent is manifest beyond reasonable question on the face of an enactment, a statute is construed to operate prospectively only."); *Bailey v. Spangler*, 289 Va. 353, 359 (2015) ("Absent an express manifestation of intent by the legislature, this Court will not infer the intent that a statute is to be applied retroactively."); *Washington v. Commonwealth*, 216 Va. 185, 193 (1975) ("The general rule is that statutes are prospective in the absence of an express provision by the legislature."). Further, according to Code § 1-238:

> "Reenacted," when used in the title or enactment of a bill or act of the General Assembly, means that the changes enacted to a section of the Code of Virginia or an act of the General Assembly are in addition to the existing substantive provisions in that section or act, and are effective prospectively unless the bill expressly provides that such changes are effective retroactively on a specified date.

The 2021 amendments were "reenact[ments]" of Code §§ 19.2-303, 19.2-303.1, and 19.2-306. 2021 Va. Acts Sp. Sess. I ch. 538. Nothing in the plain language of the 2021 amendments, nor the statutory scheme surrounding them broadly, contains any indication of the General Assembly's intent for them to apply retroactively. As we noted in *Green*, "the General Assembly easily could have stated that the amended statute could have been effective retroactively and before the normal July 1, 2021 date for newly enacted legislation to become effective, but it did not." 75 Va. App. at 82. The amended version of Code § 19.2-303 "certainly does not 'contain an express provision that the statutory changes would be effective

retroactively on a specified date,' and '[t]he absence of this required language from the bill compels a conclusion that the amendments to those sections are effective prospectively, not retroactively.'" *Id.* (alteration in original) (quoting *Berner*, 265 Va. at 413-14). "To hold otherwise 'would require this Court to add language to the statute the General Assembly has not seen fit to include, an exercise in which the Court is not free to engage.'" *Id.* (quoting *Holsapple v. Commonwealth*, 266 Va. 593, 599 (2003)).

Finally, Code § 1-239 provides:

> No new act of the General Assembly shall be construed to repeal a former law, as to any offense committed against the former law, or as to any act done, any penalty, forfeiture, or punishment incurred, or any right accrued, or claim arising under the former law, or in any way whatever to affect any such offense or act so committed or done, or any penalty, forfeiture, or punishment so incurred, or any right accrued, or claim arising before the new act of the General Assembly takes effect; *except that the proceedings thereafter held shall conform, so far as practicable, to the laws in force at the time of such proceedings*; and if any penalty, forfeiture, or punishment be mitigated by any provision of the new act of the General Assembly, such provision may, with the *consent* of the party affected, be applied to any judgment pronounced after the new act of the General Assembly takes effect.

(Emphasis added). The Supreme Court interpreted and applied the predecessor statute to Code § 1-239 in *Ruplenas v. Commonwealth*, 221 Va. 972 (1981). In *Ruplenas*, the Supreme Court ruled, "We hold that the penalty in existence at the time of the offense should be applied unless the Commonwealth first elects to proceed under the new statute and obtains the consent of the defendant to do so." 221 Va. at 978. Here, the "penalty . . . or punishment" in effect at the time of the 2019 revocation order—i.e., the period of indeterminate supervised probation—may not be altered or repealed by the 2021 amendments. *See* Code § 1-239 (providing that "[n]o new act of the General Assembly shall be construed to *repeal* a former law, as to any offense committed against the former law, or as to any act done, [or] any penalty, forfeiture, or *punishment* incurred" (emphasis added)). Simply put, offenders who have already been

- 12 -

sentenced for their conduct may not rely on subsequent statutory amendments to alter or reduce their pre-existing sentences, absent clear language to the contrary from the General Assembly.

In coming to our conclusion today, we hold only that the five-year cap does not apply retroactively. In doing so, we specifically decline to answer the question whether the new mandate contained in Code § 19.2-306(C)—that courts "shall measure the period of any suspension of sentence from the date of the entry of the original sentencing order"—would apply to cases such as this. Even if this new mandate is entirely procedural under Code § 1-239[1] and therefore applicable to Reese's case, Reese's period of supervised probation would still have been in effect when he violated the terms of his probation, as the 2019 order lawfully suspended that sentence for an indeterminate period of up to 20 years.

CONCLUSION

For the foregoing reasons, we affirm the judgment of the trial court.

*Affirmed.*

---

[1] Past Virginia cases have recognized and defined the "procedural" exception to the presumption against applying statutory revisions retroactively, contained in Code § 1-239. *See, e.g.*, *Sargent Elec. Co. v. Woodall*, 228 Va. 419, 424 (1984) ("A legislative enactment, if purely procedural in nature, may be given retroactive effect."); *Lackland v. Davenport*, 84 Va. 638, 640 (1888) ("The . . . authorities against construing statutes retrospectively when they disturb vested rights do not apply to remedial statutes. By all the authorities, remedial statutes are an exception to the rule."); *McCarthy v. Commonwealth*, 73 Va. App. 630, 647 (2021) ("[L]egislative intent to make a statute retroactive is 'manifest' . . . when the statute's amended terms affect 'remedial' or 'procedural' rights rather than 'substantive' or 'vested' rights.").